Filed 8/23/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


|  |  |
|---|---|
| In re MOISES MANCILLAS,<br><br>on Habeas Corpus. | H042652<br>(Monterey County<br>Super. Ct. Nos. SS120735A,<br>SS120011A) |


## I. INTRODUCTION

When a defendant "has been released on probation" with execution of sentence suspended, and the court is subsequently properly notified that the defendant is "confined in prison," Penal Code section 1203.2a[1] mandates that "the court shall issue its commitment" and "shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement. . . ."

In this case, petitioner Moises Mancillas was placed on probation with execution of a three-year prison term suspended. His probation was subsequently summarily revoked due to his failure to report to probation and failure to attend treatment, and a bench warrant issued for petitioner's arrest. Before further probation revocation proceedings were held, petitioner was convicted of new offenses in Nevada and sentenced to prison in that state. While in prison in Nevada, petitioner sent notifications to the trial court, which the court received on December 23, 2013. However, the trial

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

court did not act until eight months later, when it ordered petitioner's previously imposed three-year sentence to run consecutively to his Nevada sentence.

In the instant petition for writ of habeas corpus, petitioner contends the trial court lost jurisdiction, pursuant to section 1203.2a, because it did not order execution of his previously imposed sentence within 60 days of being properly notified of his imprisonment in Nevada. For reasons that we will explain, we agree with petitioner. We will therefore grant the petition for writ of habeas corpus and vacate the order executing his three-year sentence.

## II. BACKGROUND

### A. Case No. SS120011A

On January 4, 2012, the district attorney filed a complaint in case No. SS120011A, charging petitioner with unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 1) and possession of burglar's tools (§ 466; count 2). On January 31, 2012, the district attorney orally amended the complaint to include a charge of possession of a stolen vehicle (§ 496d, subd. (a); count 3), and petitioner pleaded no contest to that charge.

On February 28, 2012, the trial court suspended imposition of sentence and placed petitioner on probation for three years. Petitioner's probation conditions included a requirement that he obey all laws and a requirement that he "[n]ot remain in any vehicle" that he knew to be stolen or to contain any firearms or illegal weapons.

On April 24, 2012, the probation officer filed a probation violation petition. The petition alleged petitioner had been arrested for three felonies and had "[r]emained in a vehicle or drove a vehicle that was suspected stolen."

### B. Case No. SS120735A

On April 24, 2012, the district attorney filed a complaint in case No. SS120735A, charging petitioner with unlawful driving or taking of a vehicle (Veh. Code, § 10851,

2

subd. (a); count 1) with a prior conviction of buying or receiving a stolen vehicle (§ 666.5, subd. (a)), and misdemeanor evading an officer (Veh. Code, § 2800.2, subd. (a); count 2).

On June 1, 2012, the district attorney amended the complaint to allege felony evading in count 2, and petitioner pleaded no contest to that count. The negotiated disposition provided that petitioner would be sentenced to a three-year prison term but that execution of sentence would be suspended and petitioner would be placed on probation. Before petitioner entered his plea, the trial court warned him, "I want to be crystal clear with you. This Court views execution of sentence suspended very differently than felony probation. What that means is any willful violation of probation no matter how small - - if you fail to report, if you test positive for alcohol, if you drive without a valid California driver's license. I don't care how small the violation, the Court will send you to prison for a willful violation of probation." After the trial court reiterated that it would send petitioner to state prison for "any willful violation of probation," petitioner responded, "I fully understand that."

At the same hearing, the trial court found petitioner in violation of probation in case No. SS120011A based on his plea in case No. SS120735A.

### C.     2012 Sentencing Proceedings

On July 18, 2012, pursuant to the negotiated agreement, the trial court imposed concurrent three-year prison terms in petitioner's two cases but suspended execution of sentence. In case No. SS120011A, the trial court reinstated probation, and in case No. SS120735A, the trial court placed petitioner on probation for three years.

### D.     2013 Probation Violation Proceedings

On January 7, 2013, the probation officer filed a notice of probation violation in each case, alleging that petitioner had failed to report and had failed to comply with a probation condition requiring him to attend a drug treatment program. On January 22,

3

2013, the trial court summarily revoked petitioner's probation in each case and issued a bench warrant for petitioner's arrest.

### E.    Nevada Proceedings

According to the declaration petitioner filed in this matter, he was convicted of grand larceny and eluding the police in Nevada on August 6, 2013. Petitioner was sentenced to consecutive prison terms of 12 to 36 months for the grand larceny count and 20 to 50 months for the eluding count.

While serving his sentence in Nevada, petitioner asked prison officials "for the appropriate forms" to request sentencing on his California cases. He was provided with an eight-page packet of forms entitled "Interstate Agreement on Detainers."[2] Petitioner filled out the forms, one of which was entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints." On that form, petitioner requested "final disposition be made" of the two California cases. Petitioner identified himself by name and provided his location, as well as information about his Nevada sentence, and he provided the case numbers of the two California cases. The form was signed by petitioner and two correctional officers at the Nevada prison. Another form in the packet was entitled, "Certificate of Inmate Status," and it stated that petitioner was in custody at the Northern Nevada Correctional Center. That form was signed by James Maxey, the Warrants Coordinator at the Nevada prison. The signatures on the forms were dated September 30, 2013 and October 3, 2013.

According to the declaration of Mark Rutledge, successor to Maxey as the Warrants Coordinator for the Nevada Department of Corrections, the original packet of

---

[2] The Interstate Agreement on Detainers is codified in section 1389. It provides that when a defendant is in a "penal or correctional institution of a party state," and a detainer has been lodged based on a "untried indictment, information or complaint," the defendant must be tried within 180 days of delivering a request for "a final disposition" to the prosecutor and trial court. (§ 1389, art. III(a).)

forms is on file at the Nevada Department of Corrections, and the copies provided as exhibits to petitioner's habeas petition are true and correct. Computer records maintained by the Nevada Department of Corrections show that the forms were sent via certified mail to the trial court and the district attorney's office on December 18, 2013. Rutledge retrieved the United States Postal Service return receipts, which confirmed delivery of the forms to the trial court and district attorney's office on December 23, 2013. The postal receipts are included as an exhibit to the habeas petition. At some point after the forms were delivered, the prosecutor called Rutledge to say that the district attorney's office "would not be taking any action" because the forms were not the proper forms for requesting disposition of petitioner's pending probation violations.

Petitioner inquired about the status of his case in March of 2014, by sending a letter to the Monterey County Public Defender's Office.

### F.  *Section 1203.2a Proceedings*

On July 23, 2014, the probation officer filed a request for sentencing in each of petitioner's cases, pursuant to section 1203.2a.[3] The probation officer reported that he

---

[3] Section 1203.2a provides: "If any defendant who has been released on probation is committed to a prison in this state or another state for another offense, the court which released him or her on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he or she was granted probation, in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing, if such writing is signed in the presence of the warden of the prison in which he or she is confined or the duly authorized representative of the warden, and the warden or his or her representative attests both that the defendant has made and signed such request and that he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel. [¶] The probation officer may, upon learning of the defendant's imprisonment, and must within 30 days after being notified in writing by the defendant or his or her counsel, or the warden or duly authorized representative of the prison in which the defendant is confined, report such commitment to the court which released him or her on probation. [¶] Upon being informed by the probation officer of the defendant's confinement, or (continued)

5

had received an email from petitioner's trial counsel on July 2, 2014. In the email, petitioner's trial counsel had notified the probation officer that petitioner was incarcerated in Nevada, and he had requested that petitioner be sentenced pursuant to section 1203.2a.

At a hearing on July 24, 2014, petitioner's trial counsel appeared and confirmed that petitioner was in a Nevada prison. Petitioner's trial counsel also confirmed that petitioner had sent a document indicating he wanted the trial court to order that his California sentence run concurrently with his Nevada sentence.

On August 26, 2014, the trial court ordered execution of petitioner's previously imposed concurrent three-year prison terms, ordering those terms to run consecutively to the term he was serving in Nevada. The parties agreed that petitioner did not need to admit the pending probation violation petition since the trial court was proceeding pursuant to section 1203.2a. The petition to revoke probation was formally withdrawn.

### G.    *Appeal and Habeas Proceedings*

On October 14, 2014, petitioner filed notices of appeal in both of the underlying cases. This court appointed counsel for petitioner on appeal. The record on appeal was filed on December 16, 2014. According to the declaration of petitioner's appointed appellate counsel, he reviewed the record at that time and wrote to petitioner in Nevada. Petitioner responded and sent appellate counsel a copy of the forms he had sent to the trial court and the district attorney's office. Appellate counsel then performed investigation, obtained a declaration from Rutledge, and filed the instant habeas petition

---

*upon receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison, the court shall issue its commitment if sentence has previously been imposed. . . .* If the case is one in which sentence has previously been imposed, *the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement. . . .*" (Italics added.)

6

on August 7, 2015. This court ordered the petition considered with petitioner's direct appeal, which was fully briefed on December 24, 2015. This court subsequently affirmed the judgment on direct appeal and issued an order to show cause as to the habeas petition.[4] (*People v. Mancillas* (May 2, 2016, H041522) [nonpub. opn.].)

## III.  DISCUSSION

Petitioner contends the trial court lost jurisdiction over his cases, pursuant to section 1203.2a, when it did not order execution of sentence within 60 days of December 23, 2013—the date the trial court received notice of petitioner's imprisonment in Nevada, including the certificate signed by the Warrants Coordinator.

### A.  *Preliminary Issues*

#### 1.  **Timeliness**

The Attorney General claims that the instant petition for writ of habeas corpus is untimely because it was filed about a year after the August 2014 hearing at which the trial court ordered execution of the previously imposed sentence.

We find there was no "significant delay in seeking habeas corpus relief" in this matter. (See *In re Clark* (1993) 5 Cal.4th 750, 765 (*Clark*).) Petitioner's request for sentencing was received by the trial court on December 23, 2013. In March of 2014, petitioner sent a letter to the Monterey Public Defender's Office, inquiring about the status of his case. In July of 2014, petitioner's trial counsel notified the probation officer of petitioner's request for sentencing. The trial court ordered execution of petitioner's previously imposed sentence on August 26, 2014. Petitioner filed a timely notice of

---

[4] Our order to show case was limited to the question of whether the trial court lost jurisdiction over petitioner due to its failure to comply with section 1203.2a. In his petition for writ of habeas corpus, petitioner had also claimed the district attorney had a duty under *Brady v. Maryland* (1963) 373 U.S. 83, 87 to disclose that it received petitioner's request for disposition of his cases in December of 2013 but failed to disclose the request at that time or during the proceedings in the summer of 2014.

appeal from that order, and his appointed appellate counsel filed the instant habeas petition in conjunction with the appeal, before the Attorney General filed the respondent's brief. (Cf. *In re Robbins* (1998) 18 Cal.4th 770, 780 [pursuant to California Supreme Court policies, "a habeas corpus petition is not entitled to a presumption of timeliness if it is filed more than 90 days after the final due date for the filing of appellant's reply brief on the direct appeal"]; *Clark, supra,* at p. 760 [first habeas petition was not filed until almost one year after underlying judgment was affirmed on direct appeal and over six years after judgment was imposed].) Appointed appellate counsel's declaration shows he exercised "due diligence in pursuing potential claims" (*Clark, supra,* at p. 775), and there is no indication that any delay has prejudiced the Attorney General's ability to answer the petition. (See *id.* at pp. 786-787.)

### 2. Failure to File Habeas Petition in Superior Court

The Attorney General next claims the petition should have been filed in the trial court because petitioner's claims are fact-specific, and that therefore this court should deny the petition.

"[A] reviewing court has discretion to deny without prejudice a habeas corpus petition that was not filed first in a proper lower court. [Citations.]" (*In re Steele* (2004) 32 Cal.4th 682, 692.) However, both trial and appellate courts have jurisdiction over habeas corpus petitions, and it is reasonable for a petitioner to file a habeas petition in the court in which an appeal is pending. (See *People v. Seijas* (2005) 36 Cal.4th 291, 307 [defendant "acted reasonably" in filing a habeas petition in California Supreme Court after grant of review].)

The claims raised in petitioner's habeas petition are closely related to the claims raised in petitioner's direct appeal, and the Attorney General relies on the appellate record in disputing the factual issue of whether the trial court actually received petitioner's request for sentencing. Thus, the interests of judicial economy are promoted

8

by considering the habeas petition in this court rather than denying the petition so that it can be refiled in the trial court.

### 3. Failure to Raise Issues on Appeal

The Attorney General asserts that the petition should be dismissed because the issues presented in the habeas petition could have been raised on appeal. However, the habeas petition relies on matters outside the appellate record. Thus, the claim presented in the petition could not have been raised in petitioner's direct appeal.

### 4. Evidentiary Issues

The Attorney General argues that the two declarations submitted in support of petitioner's habeas petition (from petitioner and Rutledge) are hearsay and thus are inadmissible to establish that the trial court received actual notice of petitioner's confinement in a Nevada prison. The Attorney General does not elaborate on this argument, and our review of the declarations shows that the significant facts in those declarations are based on the declarants' personal knowledge. Moreover, as petitioner points out in his traverse, other exhibits show the trial court received notice of petitioner's confinement—copies of the documents sent to the trial court and district attorney's office, and copies of the certified mail receipts—and the Attorney General does not assert that these documents are inadmissible.

The Attorney General also argues that the appellate record refutes petitioner's claim that the trial court received notice of his imprisonment in Nevada. The Attorney General notes that during the proceedings held in July and August of 2014, petitioner's trial counsel "did not argue that sufficient notice of petitioner's demand had been given to the trial court" earlier, and in fact conceded that the trial court had jurisdiction to order execution of the previously imposed sentence. However, nothing in the appellate record shows that petitioner's trial counsel knew that petitioner had sent notice of his Nevada imprisonment to the trial court and the district attorney's office in December of 2013. Thus, the appellate record does not refute the showing petitioner has made in this

9

proceeding—that the trial court received notice of petitioner's confinement in a Nevada prison on December 23, 2013.

### B. Application of Section 1203.2a

Petitioner claims that the trial court lost jurisdiction over his cases when it failed to sentence him within 60 days of receiving the forms providing notice that he was in prison in Nevada, including the certificate from the Warrants Coordinator.

Petitioner's claim is based on section 1203.2a, which "sets forth sentencing procedures for persons who, while on probation for one offense, are committed to state prison for another offense." (*In re Hoddinott* (1996) 12 Cal.4th 992, 994 (*Hoddinott*).) "[S]ection 1203.2a was intended to provide a mechanism by which the probationary court could consider imposing a concurrent sentence, and to 'preclude[] inadvertent imposition of consecutive sentences by depriving the court of further jurisdiction over the defendant' when the statutory time limits are not observed. [Citation.]" (*Id.* at pp. 999-1000.) The statute also benefits "[t]he trial court and its clerk and probation officer," who "are afforded the convenience of closing their files in a case which otherwise might remain undisposed of for years." (*Hayes v. Superior Court* (1971) 6 Cal.3d 216, 222.)

"[S]ection 1203.2a provides for 3 distinct jurisdictional clocks: (1) the probation officer has 30 days from the receipt of written notice of defendant's subsequent commitment within which to notify the probation-granting court . . . ; (2) the court has 30 days from the receipt of a valid, formal request from defendant within which to impose sentence, if sentence has not previously been imposed . . . ; and (3) the court has 60 days from the receipt of notice of the confinement to order execution of sentence (or make other final order) if sentence has previously been imposed . . . . Failure to comply with any one of these three time limits divests the court of any remaining jurisdiction. . . ." (*Hoddinott, supra,* 12 Cal.4th at p. 999.)

Section 1203.2a's third "jurisdictional clock[]" is at issue in the instant case. (*Hoddinott, supra,* 12 Cal.4th at p. 999.) In pertinent part, section 1203.2a provides:

"[U]pon receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison, the court shall issue its commitment if sentence has previously been imposed. . . . If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement."

Several published cases have addressed a trial court's failure to comply with section 1203.2a's requirement of a timely commitment order after receiving notice of a defendant's confinement in prison, where the defendant had originally been placed on probation with execution of sentence suspended. In *People v. Martinez* (1975) 46 Cal.App.3d 736 (*Martinez*), the defendant was convicted of a criminal offense and "sentenced to state prison for the term prescribed by law," but execution of the sentence was suspended and the defendant was placed on probation for three years. (*Id.* at p. 739.) While on probation, the defendant was convicted of a second offense and committed to state prison. (*Ibid.*) One day after sentencing in the second case, the probation officer notified the trial court of the defendant's conviction and sentence. (*Id.* at p. 742.) At the time, former section 1203.2a required a trial court to act upon such notice within 30 days, but the trial court did not revoke the defendant's probation and order execution of his original sentence until more than 30 days later. (*Martinez, supra,* at p. 742.) As a result, "the court lost jurisdiction to revoke probation on the basis of the second offense," and its commitment order was void. (*Ibid.*)

The reasoning of *Martinez* was followed in *In re Flores* (1983) 140 Cal.App.3d 1019 (*Flores*). In that case, the trial court originally imposed a state prison sentence but suspended execution of the sentence and placed the defendant on probation with a one-year county jail commitment. (*Id.* at p. 1021.) The defendant subsequently escaped from jail, and a probation violation petition was filed. The defendant also subsequently

11

committed federal crimes and was sentenced to federal prison. At the defendant's request, federal prison authorities notified the district attorney of the defendant's confinement, and the defendant sent a document entitled "Application for Speedy Trial" to the trial court, asking for his probation violation matter to be set for trial or dismissed. (*Id.* at p. 1022.) The trial court denied the application and did not order execution of the previously imposed sentence until after the defendant completed his federal prison term, which was beyond the 60-day time limit of section 1203.2a. The defendant sought habeas relief, arguing that the trial court had lost jurisdiction. The *Flores* court held that the trial court should have treated the defendant's request for trial as a section 1203.2a request, and it ordered the defendant discharged from custody. (*Flores, supra,* at pp. 1022, 1025.)

The *Martinez* and *Flores* opinions were followed in *People v. Timmons* (1985) 173 Cal.App.3d 1000 (*Timmons*). In that case, the defendant was convicted of two offenses and sentenced to prison, but execution of sentence was suspended and he was placed on probation. (*Id.* at p. 1003.) The defendant was later convicted of new offenses in New Hampshire and sentenced to prison in that state. The probation officer filed a notice of probation violation, and the trial court summarily revoked the defendant's probation. The defendant then sent the district attorney and the trial court notice of his imprisonment, and he "requested final disposition" of his probation violation matter. (*Id.* at p. 1004.) The warden of the New Hampshire prison also sent notice to the district attorney and trial court. (*Ibid.*) Probation violation proceedings did not take place until about 11 months later, however, after the defendant had completed serving his New Hampshire prison sentence. (*Ibid.*) After the trial court ordered execution of the previously imposed sentence, the defendant sought habeas relief, claiming section 1203.2a precluded the trial court from making that order. The *Timmons* court agreed and ordered the defendant discharged from custody. (*Timmons, supra,* at p. 1008.)

12

As in the above cases, the trial court here did not comply with section 1203.2a's third "jurisdictional clock[]" (*Hoddinott, supra,* 12 Cal.4th at p. 999) when it received notice of petitioner's confinement in a Nevada prison but did not "issue its commitment" within 60 days of that notice (§ 1203.2a).

We requested supplemental briefing on the question of whether the trial court's jurisdiction to order execution of the previously imposed sentence was preserved by its summary revocation of petitioner's probation on January 22, 2013. We also asked the parties whether petitioner was a person who "has been released on probation" within the meaning of section 1203.2a after his probation was summarily revoked on January 22, 2013.

In his supplemental letter brief, petitioner contends that he was a person who "has been released on probation" (§ 1203.2a) even after his probation was summarily revoked, because he was still subject to the terms and conditions of his probation at that time. Petitioner further argues that the summary revocation of his probation did not preserve the trial court's jurisdiction to order execution of his sentence because section 1203.2a does not contain any exception for probationers who are in revoked status.

The Attorney General agrees that petitioner "remained a person who had 'been released on probation' " when his probation was summarily revoked on January 22, 2013. However, the Attorney General asserts that the order summarily revoking petitioner's probation "preserved the trial court's jurisdiction pending petitioner's subsequent arrest, appearance in court, or other action that invoked another statute."

Section 1203.2a applies to "any defendant who has been released on probation [and] is committed to a prison in this state or another state for another offense." In determining the meaning of the phrase "has been released on probation" as used in section 1203.2a, we apply well-established rules of statutory construction. " 'The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of

13

legislative intent. [Citation.] When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.]' [Citation.] ' "When the language is susceptible of more than one reasonable interpretation . . . , we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' [Citation.]" (*People v. Jefferson* (1999) 21 Cal.4th 86, 94.)

Applying these principles, we agree that the phrase "has been released on probation" (§ 1203.2a) applies to both a defendant who is released on probation with no pending probation violation petition and to a defendant who is released on probation and whose probation has been summarily revoked. Nothing in the language of section 1203.2a indicates it was intended to apply only where a defendant is placed on probation and later incarcerated for subsequent criminal conduct, without any intervening probation violations. Rather, section 1203.2a appears intended to also apply to defendants who are placed on probation and who have pending probation violation petitions at the time of their incarceration for subsequent criminal conduct, which was what happened in *Flores, supra,* 140 Cal.App.3d 1019. To interpret section 1203.2a as applying only to probationers who were not in summary revocation status at the time of their subsequent incarceration for new offenses would lead to anomalous results and conflict with the policy underlying the statute, which is "to provide a mechanism by which the probationary court [can] consider imposing a concurrent sentence, and to 'preclude[] inadvertent imposition of consecutive sentences by depriving the court of further jurisdiction over the defendant' when the statutory time limits are not observed. [Citation.]" (*Hoddinott, supra,* 12 Cal.4th at pp. 999-1000.) If section 1203.2a does not apply to probationers whose probation has been summarily revoked, that class of

14

probationers would be deprived of the opportunity to receive concurrent sentences in many cases.

Our construction of section 1203.2a also leads to the conclusion that the January 22, 2013 summary revocation of probation did not preserve the trial court's jurisdiction to order execution of the original sentence. Although "summary revocation of probation preserves the trial court's authority to adjudicate a claim that the defendant violated a condition of probation during the probationary period" (*People v. Leiva* (2013) 56 Cal.4th 498, 515), the purpose of section 1203.2a is to provide a mechanism for ordering execution of sentence without a formal probation revocation hearing in cases where the defendant is imprisoned for a new offense, in order to give the defendant the opportunity to receive concurrent sentences (*Hoddinott, supra,* 12 Cal.4th at pp. 999-1000). By construing section 1203.2a to apply to defendants whose probation has been summarily revoked, the purpose of the statute is furthered.

Here, petitioner has shown that he is entitled to relief based on the trial court's failure to "issue its commitment" within 60 days of receiving the certificate showing that petitioner was confined in the Nevada prison, as required by section 1203.2a. The trial court was "deprived of jurisdiction" to order execution of sentence in petitioner's cases. (§ 1203.2a.) The only remaining question is the appropriate disposition.

Petitioner asserts that because the trial court did not comply with section 1203.2a's third "jurisdictional clock[]" (*Hoddinott, supra,* 12 Cal.4th at p. 999), this court should vacate the order executing the previously imposed sentence and terminate his probation. Petitioner acknowledges that a different disposition was ordered in *People v. Murray* (2007) 155 Cal.App.4th 149 (*Murray*), where the defendant was reinstated on probation after the trial court failed to comply with section 1203.2a.

In *Murray*, the defendant was sentenced to a seven-year prison term in November of 2004, but execution of that sentence was suspended and the defendant was placed on probation for five years. (*Murray, supra,* 155 Cal.App.4th at p. 152.) The defendant was

15

subsequently convicted of a new crime in another county and sentenced to a prison term. The Department of Corrections sent notice of the defendant's commitment to the probation department, but the probation officer did not notify the trial court within 30 days of that notice, as required by section 1203.2a. (*Murray, supra,* at p. 156.) Following the defendant's release from prison, the probation officer filed a probation violation petition based on the defendant's failure to complete a drug program and the commission of the crime in the other county. (*Id.* at pp. 152-153.) The trial court found the defendant in violation of probation and ordered execution of the previously imposed sentence.

The *Murray* court found that the trial court had lost jurisdiction to order execution of the previously imposed sentence, since the probation officer failed to report the defendant's new prison commitment within the 30-day limit specified by section 1203.2a. (*Murray, supra,* 155 Cal.App.4th at p. 156.) The court held that the trial court's order executing the previously imposed sentence was void and that the prison term the defendant was serving had to be vacated. (*Id.* at p. 158.) However, the loss of jurisdiction "did not affect the original sentence," i.e., the grant of probation, which was effectively reinstated. (*Ibid.*; compare *Pompi v. Superior Court* (1982) 139 Cal.App.3d 503, 508 [loss of jurisdiction pursuant to section 1203.2a "effectively terminate[s] the previous order of probation"].)

We need not determine whether *Murray* correctly concluded that when a section 1203.2a violation occurs in a case where "sentence originally was imposed, with only execution thereof suspended," the appropriate appellate remedy is to vacate the order executing the previously imposed sentence *without* terminating probation. (*Murray, supra,* 155 Cal.App.4th at p. 158.) In *Murray*, the original five-year probationary period had not expired at the time the appellate court vacated the erroneous order, and thus the defendant was reinstated on probation for the remainder of the original probationary period. In the instant case, petitioner's three-year probationary

16

period expired in 2015.  Hence, there is no remaining period of probation that can be reinstated.

## IV.    DISPOSITION

The petition for writ of habeas corpus is granted.  The trial court's August 26, 2014 order executing petitioner's three-year prison sentence is vacated.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MIHARA, J.

*In re Mancillas*
**H042652**

Trial Court:                          Monterey County Superior Court
                                      Superior Court Nos.:  SS120735A, SS120011A


Trial Judge:                          Hon. Carrie M. Panetta


Attorney for Petitioner:              Frederick Martin Schnider,
Moises Mancillas                      under appointment by the Court of Appeal


Attorneys for Respondent:             Kamala D. Harris, Attorney General
The People                            Gerald A. Engler, Chief Assistant Attorney
                                      General
                                      Jeffrey M. Laurence, Senior Assistant Attorney
                                      General
                                      Laurence K. Sullivan, Supervising Deputy
                                      Attorney General
                                      Rene A. Chacon, Supervising Deputy Attorney
                                      General

*In re Mancillas*
**H042652**